**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **MELISSA ADDE,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 07-248C**<br>**Judge Bush** |
| **THE UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

This Court should deny Defendant's motion to dismiss because the Court does have subject matter jurisdiction to adjudicate Plaintiff Melissa Adde's claims for post allowances and cost of living adjustments and because the United States should be estopped from asserting that Ms. Adde's post allowance claims dating back more than six years are time-barred.

## ISSUES PRESENTED

1. Whether this Court has subject matter jurisdiction to adjudicate Ms. Adde's claims for post allowances and cost of living adjustments.

2. Whether the United States should be estopped from asserting that Ms. Adde's post allowance claims dating back more than six years are time-barred.

## STATEMENT OF THE FACTS

In or about 1978, Ms. Adde began her employment with the NIH in its Clinical Center, where NIH employed her as a Clinical Nurse. Complaint at ¶ 5. In or about 1988, after leaving the NIH for approximately ten months to work as a contract research nurse for the National Cancer Institute (NCI), the NIH reinstated Ms. Adde as a Nurse Specialist to work in the NCI,

Division of Cancer Treatment, Clinical Oncology Program, Pediatric Branch, Lymphoma Biology Section, in Bethesda, Maryland. Complaint at ¶ 6. Effective on or about October, 1988, NIH set Ms. Adde's pay in accordance with the Title 38 Special Salary Rates. *See* 38 U.S.C. § 4107, Pub. L. 100-436. Complaint at ¶ 7.

On or about August, 1999, NIH promoted Ms. Adde to Grade 13, and it compensated her at the corresponding pay level under the Title 38 Special Salary Schedule. Complaint at ¶ 8. In or about April of 2000, NIH transferred Ms. Adde to the International Network for Cancer Treatment and Research (INCTR), a Brussels, Belgium based organization dedicated to cancer treatment and research in developing countries. Complaint at ¶ 9. Ms. Adde manages and coordinates INCTR's Clinical Research Program, which includes projects encompassing the treatment and characterization of acute lymphoblastic leukemia, retinoblastoma, Wilms' Tumor, African Burkitt Lymphoma, breast cancer, and cervical cancer. Complaint at ¶ 10.

Due to her transfer from the NIH to INCTR, NIH changed Ms. Adde's duty station from Bethesda, Maryland to Brussels, Belgium, effective on or about April 19, 2000. Complaint at ¶ 11. NIH continued to pay Ms. Adde under the Title 38 Special Salary Schedule after she began working in Belgium in or about April of 2000. Complaint at ¶ 12. From in or about 2000 to in or about 2006, NIH consistently compensated Ms. Adde under the Title 38 Special Salary Schedule. Complaint at ¶ 13. NIH also paid to Ms. Adde corresponding and regular Cost Of Living Adjustments (COLA) and step increases with corresponding salary increases. Complaint at ¶ 13.

On or about January 6, 2005, Dr. Joe Harford, Director of the Office of International Affairs at NCI and Ms. Adde's supervisor, informed Ms. Adde that she would receive post allowance, a cost-of-living allowance granted to an employee officially stationed at a post in a

foreign area where the cost of living is higher than in Washington, D.C, to which she was entitled. Complaint at ¶ 14. Accordingly, Ms. Adde received post allowance, retroactive to on or about October 3, 2004. Complaint at ¶ 14. However, the NIH did not make any provision for retroactive payment of the post allowance which Ms. Adde should have received for the period from on or about April 19, 2000, through on or about October 3, 2004. Complaint at ¶ 15.

In or about September, 2005, NIH gave Ms. Adde a step increase to the GS-13, Step 9 level, and paid her a salary of $94,721.00 under the Title 38 #N-01 Special Salary table. Complaint at ¶ 16. In or about January of 2006, NIH cancelled Ms. Adde's 2006 Cost of Living Adjustment. Complaint at ¶ 17. Ms. Adde contacted the Office of International Affairs (OIA) to inquire why her cost-of-living increase had been cancelled. Complaint at ¶ 17. The OIA referred her inquiry to the NIH Office of Human Resources (OHR), but NIH did not respond for several months. Complaint at ¶ 17.

On or about March 2, 2007, Ms. Adde's counsel contacted Mr. Richard Taffet, Director of the Client Services Division (CSD) at the NIH Office of Human Resources (OHR), to discuss the issues relating to Ms. Adde's classification and unpaid allowances. Complaint at ¶ 18. In addition to agreeing to a number of administrative matters concerning the NIH's investigation into the proper classification for Ms. Adde, Mr. Taffet agreed to the following:

> NCI/NIH will analyze (either itself or in conjunction with the State Department) whether it paid Ms. Adde's post allowance history to determine whether she received the appropriate location compensation. If it is determined that NCI/NIH did not pay to Ms. Addde [*sic*] all of the post allowance required to be paid since she was posted to Belgium, NCI/NIH stipulates that it shall pay all unpaid post pay (this is, of course, subject to setoff for any other location pay allocation NCI/NIH might have paid to her).

Complaint at ¶ 19. Mr. Taffet agreed to speak again with Ms. Adde's counsel on April 3, 2007, to report on its progress in securing for Ms. Adde the unpaid monies to which she was entitled. Complaint at ¶ 20.

In reliance on Mr. Taffet's March 2, 2007, stipulation that NIH would pay her all unpaid post pay back to 2000, Ms. Adde elected to forbear on any legal action against the NIH, including filing this action, to recover her unpaid allowances. Complaint at ¶ 21. As of the date of this complaint, the NIH has failed and/or refused to meet its commitment to pay Ms. Adde all unpaid post pay for the period that she was stationed in Belgium from 2000 to 2004. Complaint at ¶ 22. Further, the NIH has not restored Ms. Adde's 2006 Cost of Living Adjustment and paid her the resulting allowances to which she is entitled, nor has it given Ms. Adde a Cost of Living Adjustment for 2007. Complaint at ¶ 22.

## LEGAL STANDARD FOR A MOTION TO DISMISS

In ruling of a motion to dismiss for lack of subject matter jurisdiction under RCFC 12(b)(6), the Court must accept as true the Complaint's undisputed factual allegations and construe the facts in the light most favorable to Plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, (1974), *overruled on other grounds by Davis v. Shererer*, 468 U.S. 183 (1984); *Hamlet v. United States*, 873 F.2d 1414, 1415 (Fed. Cir.1989). Plaintiff must make only a *prima facie* showing of jurisdictional facts through the submitted material in order to avoid Defendant's motion to dismiss. *Raymark Indus., Inc. v. United States,* 15 Cl. Ct. 334, 338 (1988) (citing *Data Disc, Inc. v. Systems Tech. Assoc. Inc.*, 557 F.2d 1280, 1285 (9th Cir.1977)). If the undisputed facts reveal any possible basis on which Plaintiff might prevail, the court must deny the motion. *Scheuer,* 416 U.S. at 236; *W.R. Cooper Gen. Contractor, Inc. v. United States*, 843 F.2d 1362, 1364 (Fed. Cir. 1988).

If the motion challenges the validity of the jurisdictional facts alleged in the Complaint, however, the Court may consider relevant evidence in order to resolve the factual dispute. *Rocovich v. United States,* 933 F.2d 991, 994 (Fed. Cir.1991). "The court should look beyond the pleadings and decide for itself those facts, even in dispute, which are necessary for a determination of [the] jurisdictional merits." *Farmers Grain Co. of Esmond v. United States,* 29 Fed. Cl. 684, 686 (1993) (citing *Raymark,* 15 Cl. Ct. at 335).

## ARGUMENT

### I. This Court Has Jurisdiction Over Ms. Adde's Claims for Post Allowances.

In support of it argument that this Court does not have jurisdiction to hear Ms. Adde's claims for unpaid post allowance, the United States submits that:

> Ms. Adde cites to the Department of State Standardized Regulations ("DSSR") in support of her post allowance claim. The DSSR governing post allowance sets forth the criteria under which post allowances may be paid, but do not state that the post allowances are mandatory, as opposed to discretionary. In fact, the DSSR states that employee eligibility for post allowances is "determined by the relevant agency authority." DSSR § 040(i)(4). Ms. Adde has not cited to any statute or regulation which creates a non-discretionary entitlement to post allowances for an NIH employee in her situation. Without this, her claims under the DSSR fail for lack of jurisdiction.

Motion to Dismiss at p. 6.

The United States offers no case law in support of this argument. However, this Court has already resolved the issue at bar in *Boston v. U.S.*, 43 Fed. Cl. 220 (1999). Addressing the threshold issue of whether the Court had jurisdiction to hear Boston's claim in response to the United States' motion to dismiss, the *Boston* Court declared:

> <u>Federal civilian employees on foreign assignments are entitled to certain allowances, including a living quarters allowance ("LQA") and a post allowance ("PA"), to compensate for housing and cost of living differentials in foreign areas.</u> *See* 5 U.S.C. §§ 5923(a)(2), 5924(1). <u>The rates of the allowances are determined by the Department of State ("DoS") and Department of Defense ("DoD") implementing regulations.</u> *See, e.g.,* <u>DoS</u>

Standardized Regulations ("DSSR") §§ 060-63, 130, 220, 910, 920; DoD 1400.25-M (Civilian Personnel Manual ("CPM")) 592, subchapt. 2.

*Boston*, 43 Fed. Cl. at 221 (emphasis added).

Accordingly, as a federal civilian employee of the NIH, Ms. Adde is entitled to post allowance for the period of her posting in Brussels, Belgium, as was determined by the Department of State.

The underlying facts in *Boston* are that Boston was a civilian employee of the United States Army Training and Doctrine Analysis Command, White Sands Missile Range, New Mexico ("TRAC-WSMR") from 1989 through 1992. *Boston*, 43 Fed. Cl. at 220. Boston was approached by his superiors about a scientific exchange program whereby he spent two years working at Fort Halstead, UK, located just outside London. *Boston*, 43 Fed. Cl. at 220. The post allowance problem in *Boston* stemmed from the fact that Boston was paid a post allowance rate that was applicable to the U.K generally rather than a higher post allowance rate applicable to the Greater London area. *Boston*, 43 Fed. Cl. at 221-222. Boston contended that the post allowance that had been determined for Fort Halstead, located outside London, did not accurately reflect the high cost of living in the area. *Id.* Accordingly this is where the facts diverge, as Boston's employer timely paid to Boston the post allowance applicable to his assigned location. In the matter before the Court, the facts differ as from on or about April 19, 2000, through or about October 3, 2004, the NIH failed to pay Ms. Adde any of the post allowance to which she was entitled upon her relocation to Brussels.

The *Boston* Court noted that "The essence of [Boston's] claim before this Court is that TRAC-WSMR's mishandling of plaintiff's foreign exchange constituted a breach of its implied contract to augment plaintiff's pay at a reasonable rate while plaintiff was assigned to Fort Halstead." *Boston*, 43 Fed. Cl. at 221. Thus the Court observed that "DSSR §§ 130 and 220

mandate the payment of money to plaintiff only to the extent and in the amount that DSSR § 920 provides. Yet, the essence of plaintiff's claim is that section 920 was not amended promptly enough [to reflect the actual cost of living of his duty station], not that he was denied allowances at the rate it mandated. This Court's jurisdiction does not extend to such matters." *Boston*, 43 Fed. Cl. at 227 n. 9 (emphasis added). Thus while the *Boston* Court resolved that it did not have jurisdiction to entertain the issue of the government's discretionary judgment in determining whether the post allowance amount payable at a particular location was correct,[1] it acknowledged that it had jurisdiction to hear Boston's claim had the issue been his employer's failure *in toto* to pay a post allowance.

Accordingly, the *Boston* decision resolves the issue before this Court, as the NIH failed to pay Ms. Adde any post allowance at all for the period from on or about April 19, 2000, through on or about October 3, 2004, even though the post allowance rate for Brussels, Belgium was known and certain at all times. Moreover, wage claims by federal employees are expressly within the ambit of the Tucker Act in *Bruner v. United States*, 343 U.S. 112 (1952), and DSSR § 221 expressly defines a "Post Allowance" as "a cost-of-living allowance granted to an employee officially stationed at a post in a foreign area where the cost of living, exclusive of quarters costs, is substantially higher than in Washington, D.C." Further, DSSR § 222 defines, in pertinent part, the scope of a post allowance as

> a balancing factor designed to permit employees to spend the same portion of their basic compensation for current living as they would in Washington, D.C., without incurring a reduction in their standard of living because of higher costs of goods and services at the post. The post allowance payment tables (Section 229) represent a percentage increase over Washington cost-of-living, applied to "spendable income," i.e., that portion of basic compensation available for disbursement after deduction for taxes, gifts and contributions,

[1] DSSR § 920 sets forth the Department of State's Post Classification and Payment Table (Allowances by Location). *See* http://aoprals.state.gov/content.asp?content_id=277&menu_id=81

> savings (including insurance and retirement) and U.S. shelter and household utility expenses.

DSSR § 222. Finally, DSSR § 223.1(a) mandates that a post allowance grant to a newly appointed or transferred employee "*shall* commence as of the date the employee arrives at a new post" (emphasis added), which, as provided by and in conjunction with 5 U.S.C. § 5925, is the operative authorizing regulation for Ms. Adde' post allowance.[2] Accordingly, a claim for unpaid post allowance is for all intents and purposes a wage claim by a federal employee, which is expressly within the ambit of the Tucker Act as per *Bruner v. United States*, *supra*.

**II. This Court Has Jurisdiction over Ms. Adde's Claims for Cost of Living Adjustments.**

Although the United States has moved to dismiss Ms. Adde's complaint in its entirety, it fails to proffer any argument or authorities justifying dismissing Ms. Adde's claims for unpaid Cost of Living Adjustments (COLA). A federal employee, in order to have a proper back pay claim under the Tucker Act, must show that he has a substantive right or entitlement to salary which was withheld as a result of an unjustified or unwarranted personnel action. *Spagnola v. Stockman*, 732 F.2d 908 (Fed. Cir.1984); *see also United States v. Testan*, 424 U.S. 392 (1976). This Court has long held that a Government employee is entitled to the rights and salary of the position to which he has been appointed by one having the authority to do so. *E.g., Baker* v. *United States*, 222 Ct. Cl. 263, 271, 641 F. 2d 263, 268 (1980), and cases cited thereat; *Bielec* v.

[2] Executive Order No. 10903 of January 9, 1961, No. 10970 of October 27, 1961, No. 10853 of November 27, 1959, No. 10982 of December 25, 1961, No. 11779 of April 19, 1974, No. 12228 of July 24, 1980, No. 12292 of February 23, 1981, and 12561 of July 1, 1986, authorized and directed the Secretary of State to exercise the authority vested in the President by 5 U.S.C. § 5921(3), 5 U.S.C. § 5922(b), 5 U.S.C. § 5922(c) and 5 U.S.C. § 5924(4)(B) to prescribe regulations mandating the payment of allowances and differentials authorized by 5 U.S.C. § 5925, which authorizes post differentials for "employee[s] officially stationed in the United States who [are] on extended detail in a foreign area."

*United States*, 197 Ct. Cl. 550, 560, 456 F. 2d 690, 696 (1972); *Ganse* v. *United States*, 180 Ct. Cl. 183, 186, 376 F. 2d 900, 902 (1967). Thus, Ms. Adde is entitled to her salary. Moreover, all entitlements are subject to cost-of-living adjustments. *Buckley v. Valeo*, 519 F.2d 821, 857 (D.C. Cir. 1975) (*affirmed in part, reversed on other grounds by Buckley v. Valeo,* 424 U.S. 1, (1976)). Therefore, Ms. Adde, as a federal employee, has an entitlement to a COLA when she becomes eligible for it. *E.g.*, *Zucker v. U.S.*, 758 F.2d 637, 639 (Fed. Cir. 1985). Accordingly, Ms. Adde has a viable claim for unpaid Cost of Living Adjustments, and therefore the United States' motion is due to be denied.

### III. Ms. Adde's Claims Regarding Post Allowances Prior To 2001 Are Not Time-Barred.

On or about March 2, 2007, Ms. Adde's counsel contacted Mr. Richard Taffet, Director of the Client Services Division (CSD) at the NIH Office of Human Resources (OHR), to discuss the issues relating to Ms. Adde's classification and unpaid allowances. Complaint at ¶ 18. In addition to agreeing to a number of administrative matters concerning the NIH's investigation into the proper classification for Ms. Adde, Mr. Taffet agreed to the following:

> NCI/NIH will analyze (either itself or in conjunction with the State Department) whether it paid Ms. Adde's post allowance history to determine whether she received the appropriate location compensation. <u>If it is determined that NCI/NIH did not pay to Ms. Addde [*sic*] all of the post allowance required to be paid since she was posted to Belgium, NCI/NIH stipulates that it shall pay all unpaid post pay (this is, of course, subject to setoff for any other location pay allocation NCI/NIH might have paid to her)</u>.

Complaint at ¶ 19 (emphasis added). In reliance on Mr. Taffet's March 2, 2007, stipulation that NIH would pay her all unpaid post pay back to 2000, Ms. Adde elected to forbear on any legal action against the NIH, including filing this action, to recover her unpaid allowances. Complaint at ¶ 21. When NIH failed to analyze whether it paid Ms. Adde's post allowance history to

determine whether she received the appropriate location compensation, Ms. Adde filed this action.

"Estoppel is an equitable doctrine invoked to avoid injustice in particular cases." *Heckler v. Cmty. Health Servs.*, 467 U.S. 51, 59 (1984). To succeed on the grounds of equitable estoppel, generally a plaintiff must show that it "relied on its adversary's conduct 'in such a manner as to change his position for the worse,' and that reliance must have been reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading." *Id.* (footnotes omitted). This general rule, however, is not applicable against the Government: "[I]t is well settled that the Government may not be estopped on the same terms as any other litigant." *Id.* However, the Federal Circuit has held that:

> Although the Supreme Court has not adopted a per se rule prohibiting the application of equitable estoppel against the government under any circumstances, ... the Court has suggested that if equitable estoppel is available at all against the government some form of affirmative misconduct must be shown in addition to the traditional requirements of estoppel....While the Supreme Court has not squarely held that affirmative misconduct is a prerequisite for invoking equitable estoppel against the government, this court has done so.

*Zacharin v. United States,* 213 F.3d 1366, 1371 (Fed. Cir. 2000) (internal citations omitted); *see also Frazer v. United States,* 288 F.3d 1347, 1352-53 (Fed. Cir. 2002); *Tefel v. Reno,* 180 F.3d 1286, 1303 (11th Cir. 1999); *Henry v. United States,* 870 F.2d 634, 637 (Fed. Cir. 1989).

Ms. Adde relied to her detriment on the March 2, 2007, stipulation with the NIH, and the NIH should be stopped from asserting that Ms. Adde's claims are time barred. Accordingly, the NIH should be estopped from breaching its stipulation and from asserting that Ms. Adde's claims are time barred.

## CONCLUSION

For the foregoing reasons, Plaintiff Melissa Adde respectfully requests that this Court deny the motion to dismiss and requests a hearing on Defendant's Motion to Dismiss.

Respectfully Submitted,
By Counsel

/s/ Nicholas Woodfield
R. Scott Oswald
Nicholas Woodfield
The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006
(202) 261-2812
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.net
nwoodfield@employmentlawgroup.net
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing Plaintiff's Opposition to Defendant's Motion to Dismiss was served via electronic case filing this 13th day of September, 2007, upon:

Maame A.F. Ewusi-Mensah, Esq.
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice
1100 L Street, NW
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Phone: (202) 353-0503
Fax: (202) 514-8624

/s/ Nicholas Woodfield
Nicholas Woodfield