# In the United States Court of Federal Claims

No.  07-248 C

(Filed June 1, 2011)

| | | |
|---|---|---|
| * * * * * * * * * * * * * * | * | |
| | * | |
| MELISSA ADDE, | * | |
| | * | |
| *Plaintiff,* | * | Attorney Fees and Costs; Back |
| | * | Pay Act, 5 U.S.C. §§ 5596, |
| v. | * | 7701(g) (2006); Unjustified |
| | * | Personnel Action; Prevailing |
| THE UNITED STATES, | * | Party; Interest of Justice; |
| | * | Reasonable Attorney Fees. |
| *Defendant.* | * | |
| | * | |
| | * | |
| * * * * * * * * * * * * * * | * | |

*R. Scott Oswald*, with whom was *Nicholas Woodfield*, Washington, D.C., for plaintiff.

*Russell A. Shultis*, United States Department of Justice, with whom were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, *Martin F. Hockey, Jr.*, Assistant Director, Washington, D.C., for defendant.  *Marilyn Blandford*, Department of Health and Human Services, Washington, D.C., of counsel.

_____

**OPINION**

_____

**Bush**, *Judge*.

The court has before it Ms. Melissa Adde's petition for an award of attorney fees and costs, and defendant's opposition thereto. The court has issued two previous opinions in this case: *Adde v. United States*, 81 Fed. Cl. 415 (2008) (*Adde I*); and *Adde v. United States*, 95 Fed. Cl. 4 (2010) (*Adde II*). These decisions resolved the parties' overseas pay dispute, with the government prevailing on an overpayment counterclaim in the amount of $50,430.20, and plaintiff prevailing on a portion of her post allowance claim in the amount of $33,736.60.[1] The court therefore issued a judgment whereby Ms. Adde must pay the government $16,693.60. Plaintiff now seeks an award of $150,115.81 in attorney fees and costs.[2] Pl.'s Reply at 12. Two of the fundamental questions before the court are whether Ms. Adde can be considered to be a prevailing party, and whether an attorney fees award is in the interest of justice. The other principal question is whether the amount of Ms. Adde's attorney fees request is reasonable. For the reasons set forth below, Ms. Adde's requests for attorney fees, costs and expenses are denied.

## BACKGROUND[3]

## I.    The Overpayment Dispute

Ms. Adde worked as a nurse for the National Institutes of Health (NIH) in Bethesda, Maryland, and was paid according to a special salary schedule developed for that locality. When she was posted to Brussels, Belgium in 2000 to work at an international health organization, NIH failed to change her pay. The court found that the special salary schedule pay Ms. Adde received from April 19, 2000 through February 2, 2008 was unauthorized by statute and NIH policy. *Adde II*, 95 Fed. Cl. at 10-12.

NIH eventually recognized its salary schedule error, which had resulted in

---

[1] Another portion of her post allowance claim was dismissed on statute of limitations grounds. *Adde I*, 81 Fed. Cl. at 422.

[2] In addition, Ms. Adde filed a bill of costs in the amount of $2,653.60, which seeks reimbursement of this court's filing fee and her deposition costs.

[3] The court restricts its discussion to essential procedural facts because *Adde I* and *Adde II* provide an adequate factual context for this case.

substantial overpayments to plaintiff, and contacted Ms. Adde to discuss a reduction in her pay.  These communications did not produce an easy resolution of the overpayment problem.  NIH offered Ms. Adde a waiver of the overpayment, which plaintiff apparently viewed as a bad bargain because it involved accepting the legitimacy of the pay reduction proposed by NIH.  *See* Pl.'s Reply at 8 (describing Ms. Adde's belief that "upon signing the [waiver] form, she would be agreeing that she owed the debt, and would never be able to revisit the issue").

Ms. Adde chose to retain counsel and in February 2007 asserted that her Bethesda, Maryland special salary schedule pay was valid in Belgium and that NIH should also guarantee her certain pay increases in future years.  Def.'s Resp. Att. 1 at 2-3.  When this negotiating position did not bear fruit, Ms. Adde filed a two-count complaint in this court, requesting post allowances (for the cost of living at an overseas post) and cost of living adjustments "as required by law."[4]  Compl. ¶ 29; Am. Compl. ¶ 31.  Defendant denied plaintiff's right to retroactive post allowances for the relevant years, and counterclaimed for the overpayment in salary.  Am. Answer ¶¶ 26-29, 54-56.

## II.   The Post Allowance Dispute

It is undisputed that plaintiff began to receive a post allowance for her service in Belgium sometime in 2005, and that retroactive post allowances were paid to her for the period of time beginning October 3, 2004.  Ms. Adde continues to receive the post allowance.  When plaintiff filed her suit in this court, however, and for some time thereafter, the government refused to recognize her right to retroactive post allowances for the period of time from April 23, 2001 to October 3, 2004.  Eventually the government conceded that Ms. Adde was due retroactive post allowances for this period of time, and the parties established a compromise figure that enabled the court to arrive at a final judgment in favor of the government on its counterclaim.[5]

---

[4]/  The second count of the complaint, for cost of living allowances "required by law," was dismissed for failure to meet plaintiff's burden to establish the court's jurisdiction over such a claim.  *Adde I*, 81 Fed. Cl. at 421-22.

[5]/  The award of $50,430.20 on the government's overpayment claim was offset by the award of $33,736.60 on plaintiff's post allowance claim, resulting in a final judgment for the

continue...

Although the parties differ in their characterization of the government's willingness to accept the legitimacy of plaintiff's retroactive post allowance claim for the period of time from April 23, 2001 to October 3, 2004, some facts do not appear to be in dispute. In 2001, Ms. Adde submitted a form requesting a post allowance for her service in Belgium. Pl.'s Mem. at 4; Def.'s Resp. at 6. This form did not result in any positive response from NIH. Plaintiff's counsel did not mention this form in a letter presenting Ms. Adde's post allowance claim to NIH in early 2007. Def.'s Resp. Att. 1 at 3-4. Neither plaintiff's original complaint nor her amended complaint mention the request for post allowance submitted in 2001.

Instead, the 2001 post allowance request form appears to have re-surfaced during the discovery phase of this litigation. Pl.'s Mem. at 7; Def.'s Resp. at 7. According to plaintiff, the import of the document was not addressed until June 2009. *See* Pl.'s Mem. at 7 (noting June 2009 as the time when plaintiff provided the form to defendant in response to the government's discovery requests). Although the record is not perfectly clear on this point, it appears that Ms. Adde made a formal request for a post allowance in 2001, her request went unanswered and the issue was not actively pursued for some time.

According to the complaint, the post allowance issue came to the forefront again in 2005 when Ms. Adde's supervisor notified her that she would be getting a post allowance, and a limited amount of retroactive post allowances as well. Am. Compl. ¶ 16. Soon thereafter, Ms. Adde submitted another post allowance request form. This 2005 post allowance request form finally brought Ms. Adde the post allowance she had formally sought in 2001, although the retroactive post allowance period did not cover any of her service in Belgium before October 2004. The parties agree that Ms. Adde's supervisor asked for a limited amount of retroactive post allowances because he was concerned about asking for funds from previous fiscal years. Pl.'s Mem. at 5. Although the record is not especially informative on this point, it does not appear that the issue of retroactive post allowances for Ms. Adde's first years in Belgium was actively pursued at this time.

In 2006, NIH informed Ms. Adde of the overpayment issue, and plaintiff, in return, raised the issue of the incomplete payment of retroactive post allowances.

---

[5]...continue
government in the amount of $16,693.60.

Pl.'s Ex. 7 at 3 (filed December 7, 2009).  Plaintiff's counsel again raised the
retroactive post allowance claim in early 2007.  Def.'s Resp. Att. 1 at 3-4.  The
response received from NIH stated that

> "[i]f it is determined that [NIH] did not pay to Ms. Adde
> all of the post allowance required to be paid since she
> was posted to Belgium, [NIH] stipulates that it shall pay
> all unpaid post pay (this is, of course, subject to setoff for
> any other location pay allocation [NIH] might have paid
> to her)."

Am. Compl. ¶ 21.

It took some time, however, for the government to recognize that NIH owed
Ms. Adde additional retroactive post allowances.  Defendant, once litigation began
in this court, denied that Ms. Adde had a right to retroactive post allowances for
the period of time from April 23, 2001 to October 3, 2004.  Am. Answer ¶¶ 26-29.
The government finally conceded the strength of Ms. Adde's post allowance claim
once discovery was complete and the parties had presented their cross-motions for
summary judgment.

## III.   Overpayment Counterclaim and Post Allowance Claim are Overlapping But Not Identical

The court notes that there is some overlap in quantum between the
government's overpayment counterclaim and plaintiff's post allowance claim.
Indeed, the parties were repeatedly encouraged to settle this case to avoid
protracted litigation.  Settlement negotiations were not successful, however.

There is also some temporal overlap between the government's overpayment
counterclaim and plaintiff's post allowance claim.  Some of the years Ms. Adde
was overpaid were years she did not receive a post allowance.  It should be noted
that the overpayment period, however, extended for more years than the unpaid
post allowance period.

The surface similarities of these overlapping claims should not cloud the
analysis, however.  Although the subject of both claims is the correct compensation

due Ms. Adde, the claims are distinct and independent.  The overpayment counterclaim recoups excess salary that the government has the right to recover from Ms. Adde.  The post allowance claim recovers allowances that the government should have paid Ms. Adde but did not.  Although the judgment on the post allowance claim was used as a setoff against the judgment on the overpayment counterclaim, and, indeed, the government is the only party with a net monetary judgment at the end of the day, this does not necessarily mean that the judgment in favor of plaintiff on her post allowance claim was worthless.  It is possible that Ms. Adde would have owed more money to the government, perhaps $50,000 rather than $16,000, had she not received a judgment in her favor on her post allowance claim, and had the government refused, despite its promise to pay her all required post allowances, to provide her retroactive post allowances for the period of time from April 23, 2001 to October 3, 2004.[6]

## DISCUSSION

## I.     Attorney Fees Under the Back Pay Act

The Back Pay Act, 5 U.S.C. § 5596 (2006) (BPA), provides in relevant part that:

> An employee of an agency who, on the basis of a timely appeal or an administrative determination (including a decision relating to an unfair labor practice or a grievance) is found by appropriate authority under applicable law, rule, regulation, or collective bargaining agreement, to have been affected by an *unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee–*
> (A) is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect–

---

[6]/  The court acknowledges that Ms. Adde may have had opportunities to improve her financial position that were superior to the litigation and negotiation decisions she made, especially in light of the attorney fees she incurred in prosecuting this suit.  Speculation in this regard is not particularly helpful at this point.

. . . .

(ii) *reasonable attorney fees* related to the personnel action which, with respect to any decision relating to an unfair labor practice or a grievance processed under a procedure negotiated in accordance with chapter 71 of this title, or under chapter 11 of title I of the Foreign Service Act of 1980, *shall be awarded in accordance with standards established under section 7701(g)* of this title . . . .

5 U.S.C. § 5596(b)(1) (emphasis added).  The BPA references 5 U.S.C. § 7701(g) (2006),[7] which in relevant part sets this standard for the award of attorney fees:

[the reviewing authority] *may* require payment by the agency involved of *reasonable attorney fees* incurred by an employee or applicant for employment if the employee or applicant is the *prevailing party* and [the reviewing authority] determines that payment by the agency is warranted in the *interest of justice*, including any case in which a prohibited personnel practice was engaged in by the agency or any case in which the agency's action was clearly without merit.

5 U.S.C. § 7701(g)(1) (emphasis added).  From these statutory texts, several elements can be discerned which govern the award of attorney fees under the BPA. These elements include:  "an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee," "prevailing party," "interest of justice," and "reasonable attorney fees."  5 U.S.C. §§ 5596(b)(1), 7701(g)(1).  The court also notes the use of the word "may," indicating that the award of attorney fees under the BPA is discretionary.

The court now turns to the parties' arguments concerning each element

---

[7]/ Although the bare text of the Back Pay Act could be read to reference § 7701 only for a few types of personnel actions, the standards in § 7701 apply to attorney fees awards in all BPA cases. *E.g.*, *Sims v. Dep't of the Navy*, 711 F.2d 1578, 1580 (Fed. Cir. 1983).

governing attorney fees awards under the BPA, and a discussion of relevant precedent.

## A.     Unjustified or Unwarranted Personnel Action

As defendant notes, the BPA defines a personnel action to include "the omission or failure to take an action or confer a benefit."  5 U.S.C. § 5596(b)(5); *see* Def.'s Resp. at 4.  Here, NIH failed to pay Ms. Adde a post allowance for the period of time from April 23, 2001 to October 3, 2004, and in its pleadings before this court, denied plaintiff's right to such post allowances.  The court held that Ms. Adde was entitled to these retroactive post allowances.  In these circumstances, the NIH must be viewed as having taken an unjustified personnel action against Ms. Adde.

Defendant argues that Ms. Adde was not the victim of an unjustified or unwarranted personnel action, and suggests, instead, that Ms. Adde was merely the victim of delayed payment, because the government eventually conceded its liability and agreed to pay Ms. Adde her retroactive post allowances.  Def.'s Resp. at 6-8.  Although defendant attributes the denial of Ms. Adde's post allowance requests to "a number of complicating issues," the "difficult legal issue" of retroactive pay, "unique circumstances," and "an administrative nightmare for a human resources department that had little experience in dealing with post allowance requests," *id.*, the fact remains that Ms. Adde did not obtain post allowances required by statute until well after she had commenced litigation and the government had denied her right to such post allowances in its pleadings before this court.  The overseas assignment of Ms. Adde and the overpayment dispute do not excuse the government's refusal to acknowledge Ms. Adde's right to retroactive post allowances for the period of time from April 23, 2001 to October 3, 2004.

Defendant also argues that pay claims should not be considered unjustified personnel actions for the purposes of awarding attorney fees under the BPA.  Def.'s Resp. at 4-5.  The government relies on *Bell v. United States*, 23 Cl. Ct. 73, 77 (1991), and *Gilbert v. F.D.I.C.*, 950 F. Supp. 1194, 1199 (D.D.C. 1997), for this argument.  The court notes that neither of these cases is binding on this court, and neither contains a thorough, or persuasive, analysis of this court's consideration of pay cases brought under the BPA.  There is binding precedent showing that a

8

variety of pay claims may be brought in this court under the BPA because these claims implicate personnel actions addressed by the statute.  *See, e.g.*, *Hall v. United States*, 617 F.3d 1313, 1318 (Fed. Cir. 2010) (reversing a decision of this court dismissing a claim for "forfeited pre-removal pay" brought under the BPA); *Worthington v. United States*, 168 F.3d 24, 25-27 (Fed. Cir. 1999) (reversing a decision of this court dismissing a claim for "compressed work schedule" back pay brought under the BPA).  Pay claims, as long as these claims are founded on allegedly unjustified personnel actions not subject to redress before the Merit Systems Protection Board (MSPB), are the proper subject of BPA claims brought before this court.  *Worthington*, 168 F.3d at 26-27 (citations omitted).

Because Ms. Adde has suffered an unjustified personnel action, the court may consider her request for attorney fees under the BPA.

### B.    Prevailing Party

Ms. Adde may not recover reasonable attorney fees for her suit unless she is "the prevailing party."  5 U.S.C. § 7701(g)(1); *see Sacco v. United States*, 452 F.3d 1305, 1309 (Fed. Cir. 2006) (citing *Gavette v. Office of Pers. Mgmt.*, 808 F.2d 1456, 1461 (Fed. Cir. 1986)).  Defendant argues that because "the net effect of Ms. Adde's decision to pursue this lawsuit is that she now *owes* the government $16,693.60[,] . . . [b]y any objective measure, Ms. Adde is *not* a prevailing party."  Def.'s Resp. at 8.  There is a superficial attractiveness to defendant's proposition, but the term "prevailing party" is a term of art that requires a deeper analysis.

Defendant relies on a 1995 opinion of the United States Court of Appeals for the Federal Circuit for this definition of a "prevailing party":

> [a plaintiff] must show that she "obtained all, or a significant portion of, the relief sought in [her suit] as a result of the institution of the [suit]."

*Irwin v. Small Bus. Admin. Agency*, 45 F.3d 417, 418 (Fed. Cir. 1995) (quoting *Quintanilla v. Dep't of the Navy*, 59 M.S.P.R. 547, 549 (1993) (emphasis removed in original).  *Irwin* appears to be of little precedential value for this issue.  First, the MSPB had abandoned the prevailing party definition set forth in *Quintanilla* even before *Irwin* was issued, although *Quintanilla* itself had not been expressly

overruled at that point in time.  *See Garcia v. U.S. Postal Serv.*, 83 M.S.P.R. 458, 461 (1999) (noting that *Ray v. Dep't of Health & Human Servs.*, 64 M.S.P.R. 100 (1994), overruled the definition of prevailing party set forth in several earlier MSPB cases, including *Quintanilla*).  Second, the MSPB abandoned its prior definition of prevailing party based on its interpretation of the United States Supreme Court's decision in *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992). *Garcia*, 83 M.S.P.R. at 461.  In *Garcia*, the MSPB noted that the Federal Circuit in *Irwin* had ignored *Farrar* and had relied on *Quintanilla*, a case that no longer reflected MSPB precedent.  83 M.S.P.R. at 461 & n.2.  Indeed, no court or tribunal has cited *Irwin*'s definition of prevailing party, other than *Garcia*'s passing reference to its questionable foundation.

The Federal Circuit has provided more recent precedent defining the term "prevailing party," in an opinion that fully recognizes the import of *Farrar*.  In *Singer v. Office of Senate Sergeant at Arms*, 173 F.3d 837 (Fed. Cir. 1999), the Federal Circuit set forth these useful measures of "prevailing party" status:

> The Supreme Court has given meaning to the term "prevailing party."  In *Hensley v. Eckerhart*, the Court held that a prevailing party must "succeed on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit."  461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983) (citation omitted).  The Court noted that this standard is "generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'"  *Id.* at n. 7, 103 S. Ct. 1933.  More recently, the Court held in *Farrar v. Hobby* that "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."  506 U.S. 103, 111-12, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992) (citations omitted); *see also Texas State Teachers Ass'n. v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 109 S. Ct. 1486, 103 L. Ed. 2d 866 (1989).

*Singer*, 173 F.3d at 841.  The court believes *Singer* to be far more authoritative

10

than *Irwin*, and will apply *Hensley*, *Farrar* and *Singer* to the "prevailing party" issue in this case. *See Shum v. Intel Corp.*, 629 F.3d 1360, 1369 (Fed. Cir. 2010) (relying on *Singer* and *Farrar*, among other authorities, for a "prevailing party" test in the patent litigation context).

Ms. Adde's victory on her post allowance claim constituted success on a significant issue in this litigation, materially altered the legal relationship between the parties, and induced a change in the government's behavior, vis-a-vis her retroactive post allowance request, that benefitted plaintiff. Defendant's arguments based on *Irwin* have no merit. Because plaintiff is a prevailing party under the principles set forth in *Hensley*, *Farrar* and *Singer*, the court may grant her attorney fees request, if it is in the interest of justice.

## C.    Interest of Justice

Under § 7701(g)(1), a court or the MSPB may award a prevailing plaintiff attorney fees if it is in the interest of justice to do so. *See* 5 U.S.C. § 7701(g)(1); *Sterner v. Dep't of Army*, 711 F.2d 1563, 1565-66 (Fed. Cir. 1983) (describing the "interest of justice" element as a prerequisite for an attorney fees award under § 7701(g)(1)). BPA attorney fees awards are governed by the same standard. *See*, *e.g.*, *Massa v. United States*, 833 F.2d 991, 992 (Fed. Cir. 1987). The MSPB has described several categories of situations that make an attorney fees award warranted in the interest of justice:

> 1.  Where the agency engaged in a "prohibited personnel practice" . . . ;
> 2.  Where the agency's action was "clearly without merit" . . . , or was "wholly unfounded," or the employee is "substantially innocent" of the charges brought by the agency;
> 3. Where the agency initiated the action against the employee in "bad faith," including:
> a. Where the agency's action was brought to "harass" the employee;
> b. Where the agency's action was brought to "exert improper pressure on the employee to act in certain ways";

11

4. Where the agency committed a "gross procedural
error" which "prolonged the proceeding" or "severely
prejudiced" the employee;
5. Where the agency "knew or should have known that it
would not prevail on the merits" when it brought the
proceeding.

*Allen v. U.S. Postal Serv.*, 2 M.S.P.B. 582, 592-93 (1980) (footnotes omitted).
These "interest of justice" categories have been adopted by the Federal Circuit,
although the *Allen* categories are not exhaustive.  *See, e.g.*, *Morrison v. Nat'l
Science Found.*, 423 F.3d 1366, 1370 (Fed. Cir. 2005); *Massa*, 833 F.2d at 992.

The court notes that Ms. Adde's case is somewhat unusual:  first, because
she requests attorney fees under the Back Pay Act for a pay dispute; and second,
because her claim for post allowances was of less value than the government's
claim for salary overpayment.  In these circumstances, it is difficult to apply the
*Allen* categories with any confidence.[8]  Furthermore, most of the cases discussing
the *Allen* interest of justice categories are not analogous to Ms. Adde's case.  One
Federal Circuit case, however, addresses the "interest of justice" issue in a manner
that offers guidance in this case.

In *Sterner*, the Federal Circuit identified two factors pertinent to the "interest
of justice" prerequisite of § 7701(g)(1):

[W]e also hold that the de minimis nature of the victory
obtained by a prevailing employee may be considered by
the [MSPB] under the aegis of the second, "interest of
justice," prerequisite.  This consideration is entirely
consistent with the board's guidelines in the *Allen* case in
that it concentrates on *the magnitude of the injustice done
the employee* and in that the *Allen* guidelines do not

---

[8]/  None of the *Allen* categories are a perfect fit here.  There was no allegation of a
"prohibited" personnel practice (category I); there were no charges brought against Ms. Adde,
and the agency's actions were merited in one instance but unmerited in another (category II); the
complaint contains no allegations of bad faith (category III); there were no gross procedural
errors, and delays in this litigation appear to have been caused by both parties (category IV); and
finally, this proceeding was brought by Ms. Adde, not the government (category V).

purport to exclude other factors relevant to the interest of justice.

*Sterner*, 711 F.2d at 1567-68 (emphasis added and footnote omitted).  Under the *Sterner* formulation of the interest of justice, then, Ms. Adde would not be eligible for attorney fees unless "the magnitude of the injustice done" her by NIH was sufficient to warrant an award of such fees.  *See Van Fossen v. Merit Sys. Prot. Bd.*, 788 F.2d 748, 749, 751 n.7 (Fed. Cir. 1986) (noting that the magnitude of any injustice done the employee is relevant, and indeed, is a "controlling consideration[]," in satisfying the "interest of justice" prerequisite for an attorney fees award (citing *Sterner*, 711 F.2d at 1567-68)).  Furthermore, under *Sterner*, a *de minimis* success would not justify an award of fees "in the interest of justice." 711 F.2d at 1567-68.

Reviewing Ms. Adde's treatment under *Sterner*, NIH pursued a reasonable settlement of the pay dispute with Ms. Adde.  NIH first offered her a waiver of the salary overpayment; only when Ms. Adde refused to sign the waiver did the agency proceed to collection activities.  Later, when confronted with Ms. Adde's salary and post allowance demands, the agency promised to pay her any unpaid post allowances which were not set-off by other locality pay she had received.  It was only after NIH was forced to defend its actions in this court that the government denied Ms. Adde's right to post allowances.  On this record, the court does not find that the injustice, if any, done Ms. Adde was of the magnitude to warrant an award of attorney fees.  In the court's view, the efforts by NIH to resolve Ms. Adde's salary overpayment situation and to respond to her requests for post allowances were more fair than unfair and thus, an award of attorney fees to Ms. Adde is not in the interest of justice.  *See Massa*, 833 F.2d at 992 ("'Divination of [the interest of justice] must, in the most rigorous but still fallible last analysis, rely upon an impartial and rational sense of fairness constrained by practicality.'" (quoting *Allen*, 2 M.S.P.B. at 593-94)).

As far as a *de minimis* victory is concerned, the record is less clear.  The judgment on Ms. Adde's claim was not *de minimis*.  That judgment may have actually secured a substantial benefit for Ms. Adde, in that the court judgment on the government's counterclaim was substantially reduced.  Even though coming to court to ultimately lose $16,000 may appear to be either a *de minimis* victory or no victory at all, it is unclear how the government would have treated Ms. Adde's post

13

allowance claim had she not brought suit in this court.[9]  Given these uncertainties, the court cannot determine whether Ms. Adde would be considered to have secured only a *de minimis* victory, and cannot determine whether, under *Sterner*, Ms. Adde would also be considered to be ineligible for an award of attorney fees on the *de minimis* victory ground.[10]

The court concludes that an award of attorney fees to Ms. Adde is not warranted in the interest of justice, because none of the *Allen* categories apply and no injustice was done Ms. Adde that forced her to bring this lawsuit.  *See Sterner*, 711 F.2d at 1568 (holding that the focus of the inquiry into the interest of justice is on the magnitude of the injustice done the employee).  Plaintiff argues that her case fits within some of the *Allen* categories, *see* Pl.'s Reply at 7 (stating that "Defendant's case was unfounded, without merit, and one that the Defendant knew or should have known that it would not prevail on the merits when it brought the proceeding"), but the court disagrees.  The court notes first that it was plaintiff who brought this suit, not defendant, and her costly decision is not attributable to defendant.  Furthermore, none of the *Allen* categories describe what happened here.  *See supra* note 8.  This is not a case where a prohibited or egregious agency action compelled an employee to come to this court.  Instead, two parties to a pay dispute could not come to a reasonable resolution and this lawsuit was the unfortunate consequence of that impasse.

Ms. Adde has not shown that an award of attorney fees in this case is in the interest of justice, under the binding precedent of *Sterner*.  The court notes that the burden of proof on this issue rests with plaintiff.  *See Dunn v. Dep't of Veterans Affairs*, 98 F.3d 1308, 1313 (Fed. Cir. 1996) (citing *Sterner*, 711 F.2d at 1566).  Because an award of attorney fees under the BPA is discretionary, *Gavette*, 808

---

[9]/  Ms. Adde's original post allowance claim before this court was for four and a half years of service overseas.  One year's worth of her post allowance claim was barred by this court's statute of limitations.  *Adde I*, 81 Fed. Cl. at 422.  The court notes that it is possible that Ms. Adde could have collected more post allowance from NIH if she had not come to this court and had not lost a portion of her claim due to this court's statute of limitations.  On the other hand, it is possible that the government's calculation of the amount of post allowance due Ms. Adde would have been the same or less than the amount agreed to by the parties in this suit.

[10]/  The court also notes that *Sterner* was decided well before *Farrar*, and may not reflect recent Supreme Court precedent concerning fee-shifting statutes and the degree of victory required for an award of attorney fees.

F.2d at 1464-65, and because plaintiff has failed to show that such an award in this case is in the interest of justice, the court denies plaintiff's petition for an award of attorney fees and costs.[11]  In the interest of judicial economy, the court now turns to a discussion of quantum, to determine the amount of a reasonable award of attorney fees and costs for plaintiff, if she had shown that an award of attorney fees was warranted in the interest of justice.

## D.   Reasonable Attorney Fees and Costs

At the outset, the court notes that the BPA provides for a discretionary award of reasonable attorney fees, but does not provide for an award of taxable costs.  *See Gavette*, 808 F.2d at 1462 & n.29 (citing *Bennett v. Dep't of the Navy*, 699 F.2d 1140, 1142-46 (Fed. Cir. 1983)).  Thus, as a preliminary matter, the court would reduce plaintiff's fees and costs request for any award of taxable costs not permitted under this precedent.  Plaintiff apparently concedes that *Gavette* provides the correct standard on this issue, because plaintiff cites two decisions applying the distinction noted in *Gavette* – taxable costs are unavailable under the BPA, whereas certain attorney expenses may be awarded.  *See* Pl.'s Mem. at 11.

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley*, 461 U.S. at 433.  It is well-established that the degree of success obtained may be a factor in adjusting the amount of an award of reasonable attorney fees.  *Id.* at 434.  Where a plaintiff has achieved only partial or limited success, the compensable portion of attorney efforts on the case may be

---

[11]/ This court denied an attorney fees petition for similar reasons in another pay dispute brought under the BPA.  *Abramson v. United States*, 45 Fed. Cl. 149 (1999).  The court noted that "no presumption lies in favor of fees simply because plaintiff was successful in the litigation."  *Id.* at 151 (citations omitted).  The court commented that "[o]nly when [the character of the government's conduct] has been particularly egregious, such that the Government has irreparably prejudiced the employee or callously wasted judicial resources, have the courts awarded attorneys' fees."  *Id.* at 151-52 (citations omitted).  Although this description of the availability of attorney fees under the BPA may not specifically reference every possible qualifying scenario, *cf. Van Fossen*, 788 F.2d at 751 (holding, in a case where the initial disciplinary action taken against a federal employee was overly severe, that substantial innocence entitled a plaintiff to attorney fees), *Sterner* instructs that fee awards are available only when injustice of a certain magnitude has been done the plaintiff.  No such injustice is present in this case.

reduced.  *Id.* at 436-37.  Indeed, it may be reversible error for this court not to consider reducing a fee request when a plaintiff has had limited success on his or her claims.  *See Hubbard v. United States*, 480 F.3d 1327, 1333 (Fed. Cir. 2007) (reversing a fee award because this court failed to "proceed to the second step [in *Hensley*,] of determining whether there were circumstances that required a reduction in the fee thus calculated – particularly whether such fee would be excessive in light of the results achieved").

### 1.    Overview of Plaintiff's Attorney Fees and Costs Request(s)

Plaintiff requests, in one filing, an award of $148,867 in attorney fees and $1,248.81 in costs.  Pl.'s Reply at 12.  This includes 674.5 hours of work for attorneys and other staff.  Pl.'s Mem. Ex. 3 at 38.  The costs requested apparently include the service of one consultant, and the filing fee for an appeal of *Adde II* to the Federal Circuit.[12]  *Id.* Ex. 4 at 1-2; *see also* Pl.'s Reply at 12 (reducing the original costs request by $900, apparently for two charges related to expert services rendered on May 21, 2009 and October 26, 2010).  The other costs noted in this filing include postage, telephone and local transportation costs.[13]  Pl.'s Mem. Ex. 4 at 1-2.  In a separate document, plaintiff has also requested an award of her costs for deposition expenses and the filing fee in this court, in the amount of $2,653.60. Bill of Costs, at 1 (filed February 4, 2011).

### 2.    Taxable Costs Must Be Excluded

---

[12]/  The appeal of *Adde II* was later withdrawn upon motion by plaintiff.

[13]/  Plaintiff's filings muddle the distinction between taxable costs and attorney expenses noted in *Gavette*, a case brought to counsel's attention before plaintiff applied for a fees and costs award.  *See* Order of January 6, 2011, at 2.  The costs requested in a separately filed "Bill of Costs" are obviously taxable costs and unavailable under the BPA.  The "Bill" costs are for deposition expenses and the filing fee in this court.  *See* Bill of Costs, at 1 (filed February 4, 2011).  Those same "Bill" costs are nonetheless mentioned in an attachment to the memorandum justifying plaintiff's petition for attorney fees and costs under the BPA, even though the petition does not include the "Bill" costs in the total costs requested in the petition.  Pl.'s Mem. Ex. 2 ¶ 25, Ex. 4.  Plaintiff's filings thus contain internal contradictions that make it difficult to analyze plaintiff's "Bill of Costs," which presents cost items but no legal argument.  The court attempted to prevent such confusion by ordering plaintiff to file one comprehensive fees and costs request in motion form, but this order was apparently ignored.  *See* Order of January 6, 2011, at 2.

None of Ms. Adde's taxable costs are available under the Back Pay Act. Her entire Bill of Costs, which is for deposition expenses and this court's filing fee, is therefore disallowed.[14]  Furthermore, two of the charges on her other request for attorney expenses or costs are not allowable under *Gavette*:  the filing fee for her appeal of *Adde II* to the Federal Circuit, and a consultant fee for services rendered on June 16, 2008.  Pl.'s Mem. Ex. 4 at 1-2.  These charges total $855. Ms. Adde's request for costs would therefore be reduced by that amount.  Thus, even if Ms. Adde were eligible for an award of attorneys fees and expenses under the BPA, her award of costs/expenses would consist of $393.81.

### 3.    Lead Attorney Rates are Excessive

Plaintiff contends that this was complex federal litigation and that plaintiff's counsel of record and another attorney at that firm reasonably charged $420/hour for their work.  Pl.'s Mem. Ex. 2 ¶ 16.  Furthermore, less experienced attorneys at that firm charge $230/hour and assistants charge $135/hour.  *Id.*  Defendant counters that plaintiff has not established that this was complex litigation or that these rates are reasonable.  Def.'s Resp. at 13-14 (citing *Raney v. Fed. Bureau of Prisons*, 222 F.3d 927, 938 (Fed. Cir. 2000)).  In the absence of contradictory evidence from defendant, however, the court accepts plaintiff's evidence that the lower rates charged by the associates and legal assistants who worked on Ms.

---

[14]/  Plaintiff's Bill of Costs, which asserts no particular statutory authority for the award of this court's filing fee and deposition expenses to plaintiff, appears to be founded on the BPA, because plaintiff's memorandum references the expenses listed in her Bill of Costs and relies upon the BPA.  *See* Pl.'s Mem. at 4, Ex. 2 ¶ 25.  Even if another statute might provide for an award of the taxable costs listed in the Bill of Costs, the court exercises its discretion to not award costs in this instance.  *See Neal & Co. v. United States*, 121 F.3d 683, 687 (Fed. Cir. 1997) (noting this court's "considerable discretion to award costs" to a plaintiff under 28 U.S.C. § 2412 (2006)).  The court notes, too, that in another context, the Federal Circuit has affirmed the award of costs to the *greater* victor in a suit involving multiple claims and counterclaims, rather than to the *lesser* victor.  *See Shum*, 629 F.3d at 1371 (affirming the trial court's decision on costs where "the district court did not abuse its discretion in considering the parties' relative success when awarding costs in this mixed judgment case").  Finally, it is within this court's discretion to not award costs when both sides have achieved some success on their claims.  *See Alpha I, L.P. ex rel. Sands v. United States*, 94 Fed. Cl. 737, 739 (2010) (finding that because the "plaintiffs ha[d] prevailed on certain issues and defendant ha[d] prevailed on other issues, . . . neither party [wa]s entitled to costs of litigation").  For all of these reasons, an award of taxable costs to plaintiff is inappropriate in this case.

Adde's case are indeed market rates for this type of case.

The court is not convinced, however, that the $420/hour rate charged by Mr. Oswald and Mr. Woodfield is reasonable, even if it might be the market rate for some employment law attorneys practicing in Washington, D.C. in complex cases. As this litigation proceeded, plaintiff's counsel displayed a lack of understanding of this court's rules, an inattention to the court's directives, and, at times, a failure to discern pertinent statutory, regulatory and precedential authority.[15]  The court has compared the performance of these attorneys to other attorneys practicing before this court, and finds that a rate of $350/hour is a reasonable rate for the work performed at the skill level of Ms. Adde's lead attorneys.[16]  This rate is on the high end of rates charged by lead attorneys in the Vaccine Program, for example, and the similarity of some of the more difficult Vaccine Cases and this case convince the court that this rate is reasonable for Mr. Oswald and Mr. Woodfield. *See Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984) (noting that reasonable hourly rates are those that "are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation"); *Rodriguez v. Sec'y of Dep't of Health & Human Servs.*, No. 06-559V, 2009 WL 2568468, at *13 n.43 (Fed. Cl. Spec. Mstr. July 27, 2009) ("In general, attorneys who have [extensive] years of practice and experience in Vaccine Act litigation have been awarded hourly rates of between $250-350.00 per hour for work performed in the last two years . . . .") (citations omitted), *aff'd*, 91 Fed. Cl. 453

---

[15]/  To cite a few relevant examples, counsel for plaintiff consistently failed to properly sign filings and certificates of service, despite reminders from this court.  *See* Order of February 8, 2011 at 1 n.1; Order of October 14, 2009, at 1 n.1.  Counsel for plaintiff ignored court directives as to how to file motions.  *See* Order of January 6, 2011 at 2 (directing plaintiff to file any and all requests for fees and costs by motion, rather than by means of a bill of costs, a directive that was ignored); Order of October 14, 2009 (striking plaintiff's filing of a motion for summary judgment, as that attempted filing conflicted with the court's previous orders stating that defendant's motion would be filed first).  Counsel for plaintiff failed to cite, or incorrectly cited, statutory, regulatory and precedential authority favorable to plaintiff's claims.  *See Adde I*, 81 Fed. Cl. at 419 n.3 (noting that plaintiff's amended complaint failed to identify the correct regulation as support for plaintiff's post allowance claim); *id.* at 421 (noting that plaintiff had failed to cite any valid statutory or precedential authority in support of a federal employee's right to receive cost of living adjustments to his or her salary).

[16]/  The court does not mean to suggest that a more skilled employment law attorney would have obtained a different result in either *Adde I* or *Adde II*.  Those results flow from the law governing this pay dispute.

(2010), *aff'd*, 632 F.3d 1381 (Fed. Cir. 2011).  Another court has found $350/hour to be a reasonable rate for an experienced attorney in Washington, D.C. who recently litigated a case that was not complex.  *See Laborers' Int'l Union v. Brand Energy Servs. LLC*, 746 F. Supp. 2d 121, 125-26 (D.D.C. 2010) (approving, in a "not 'complex'" case, a $350/hour rate for a labor attorney with thirty years of experience); *see also Muldrow v. Re-Direct, Inc.*, 397 F. Supp. 2d 1, 4-5 (D.D.C. 2005) (reducing fees charged at "complex federal litigation" rates by 25%, because that case was a "relatively straightforward negligence suit").  The court notes, too, that a district court has twice ruled that the correct rate for the lead attorneys at the firm employed by Ms. Adde is $350/hour, although those cases were prosecuted in Northern Virginia, not in the District of Columbia.  *Alford v. Martin & Gass, Inc.*, No. 1:08cv595 (LMB/TRJ), 2009 WL 2447936, at *4 (E.D. Va. Aug. 3, 2009); *Jackson v. Estelle's Place, LLC*, No. 1:08cv984 (LMB/TRJ), 2009 WL 1321506, at *3 (E.D. Va. May 8, 2009), *aff'd*, 391 Fed. App'x 239, 241 (4th Cir. 2010).  For all of these reasons, the court finds that $350/hour is a reasonable hourly rate for Ms. Adde's lead attorneys in this case, which was a very straightforward pay dispute of little complexity.[17]

If all of the hours expended by the attorneys charging $420/hour in this case were corrected to a reasonable rate of $350/hour, Ms. Adde's attorney fees request would be reduced by $12,411.[18]  In the court's view, however, two other types of reductions would have been considered in this case, before adjusting the hourly rate for plaintiff's lead attorneys.  The number of billed hours would have been reviewed to consider whether these should be reduced to a reasonable amount.  Another adjustment would have been to reduce the award because of the limited success achieved by plaintiff.  The court would have carefully considered how these reductions would have interacted, to guard against overlapping and duplicative reductions in the amount of fees requested by Ms. Adde.

### 4.    Excessive Billed Hours vs. Unfruitful Billed Hours

---

[17]/  The court has considered plaintiff's extensive discussion of the factors that might assist in establishing the reasonableness of the fees charged to Ms. Adde, Pl.'s Mem. at 14-21, and finds therein no reason to adjust, upwards or downwards, the $350/hour rate discussed *supra*.

[18]/  According to the court's calculation, charges at the $420/hour rate total $74,466 in the billing data submitted by plaintiff.  Pl.'s Mem. Ex. 3.  The corrected charge would be $62,055.

Defendant challenges one instance of allegedly excessive billed hours, the number of hours expended on plaintiff's petition for fees. Def.'s Resp. at 15. The court does not view these specific billed hours as unnecessary or excessive. The amount of attorney fees requested for the whole case, $148,867, exceeds the combined value of the government's counterclaim and Ms. Adde's post allowance claim.[19] The fact that the fee petition itself evidences fundamental misunderstandings of the availability of attorney fees under the Back Pay Act does not indicate that plaintiff's counsel spent too many hours preparing the petition.

Rather, the fee petition is simply another example of the limited success achieved by plaintiff in this litigation. One count of the complaint was dismissed, the claim in the other count was reduced by twelve months' worth of post allowances, plaintiff's defense against the government's counterclaim was totally unsuccessful, and her large attorney fees and costs petition has been rejected as not being in the interest of justice. Because plaintiff has failed to prevail on so many of her objectives, the most logical way to proceed is to simply eliminate the unfruitful hours of attorney effort from her fees request. Whether the court might find excessive hours charged for certain tasks that led to plaintiff's defeat on so many issues is an inquiry that serves no purpose. The correct fee amount will be achieved by reducing Ms. Adde's request in light of the limited success achieved, and, to a lesser extent, by examining the billing that was related to Ms. Adde's successful post allowance claim.

## 5.     Reductions Related to the Work Done on the Post Allowance Claim

The court must first consider whether the hours billed for work on the retroactive post allowance claim, the one claim upon which Ms. Adde prevailed, were excessive. This is an interesting question. Oral argument was heard on this claim. At least a portion of deposition time was spent exploring this claim. An expert was consulted concerning the quantum of this claim. This claim was also discussed in settlement negotiations. All of this activity triggered extensive billing

---

[19]/ The court notes that the attorney fees billed Ms. Adde appear to be disproportionate to any rational expectation of success on her claims, and to any rational expectation that the government's counterclaim could be defeated. *See Kirchoff v. Flynn*, 786 F.2d 320, 325 (7th Cir. 1986) ("Except in grudge litigation, no client, however wealthy, pays a lawyer more than a dollar to pursue a dollar's worth of recovery.").

charges, even though, in the court's view, her claim was relatively straightforward.[20]

Undoubtedly, some of the attorney time devoted to this claim was necessary. Defendant raised numerous arguments against this claim, at least at the outset of this litigation.  In addition, it is not easy to separate the time devoted to the post allowance claim from other work done during the early phases of this litigation. For these reasons, the court does not find that the number of attorney hours spent on the post allowance claim is unreasonable.

The court must, however, correct the billing rate for Mr. Oswald and Mr. Woodfield for work that appears to have been devoted to the post allowance claim. The court acknowledges that plaintiff's billing records, although comprehensive and fairly specific, do not provide enough detail to perfectly discern the number of hours these two attorneys spent solely on the post allowance claim.[21]  Defendant argues that only nine percent of deposition questions were devoted to the post allowance issue, and suggests that this is an appropriate percentage of the time devoted to this issue overall by plaintiff's law firm.  Def.'s Resp. at 15 & n.4.  The court cannot agree that the depositions accurately represent this litigation as a whole.

Plaintiff's billing records show that two primary issues occupied Ms. Adde's attorneys' attention in the period of time leading up to the court's resolution of defendant's motion to dismiss:  Ms. Adde's special salary schedule pay classification and her post allowance claim.[22]  Research into jurisdictional issues and negotiations with NIH are mentioned in the billing records.  It appears that more attention was paid, at this point, to the post allowance claim than to the pay classification issue.  Thus, the court estimates that sixty percent of the billing by Mr. Oswald and Mr. Woodfield for services performed up until April 15, 2008 was

---

[20]/ The court notes that Ms. Adde was receiving post allowances for her service in Belgium, and the government had promised to pay her any unpaid post allowances, subject to set-offs, before she commenced suit in this court.

[21]/ The court notes, however, that the overpayment counterclaim, the cost of living adjustment claim, and the post allowance claim are entirely distinct and separate claims.

[22]/ There is little if any mention of research into plaintiff's cost of living adjustment claim, presented in Count II of the complaint.

devoted to the post allowance claim. Therefore, sixty percent of the hours billed by these two attorneys during this time must be adjusted to the correct $350/hour rate.

For this phase of the litigation, these two attorneys billed $21,378. Sixty percent of those charges equals $12,827. Their time spent on the post allowance claim should have been charged at $10,689, using a reasonable hourly rate of $350/hour. Thus, a preliminary deduction from Ms. Adde's fee request would be $2,138, for the services rendered before April 15, 2008.

From April 15, 2008 until the court decided the parties' cross-motions for summary judgment in *Adde II* and entered final judgment on January 6, 2011, two issues predominated in this case – the post allowance claim and the overpayment counterclaim. For this phase of the litigation, the court estimates that Ms. Adde's attorneys spent less than half of their time on her post allowance claim, or approximately forty percent of their time. Forty percent of the hours charged by Mr. Oswald and Mr. Woodfield for this period of time must be corrected to reflect the $350/hour rate.

Billing for these two attorneys from April 15, 2008 through January 5, 2011 was in the amount of $50,232, of which $20,093 can be estimated to have been for Ms. Adde's post allowance claim.[23] Corrected for a reasonable attorney hourly rate, the value of these services was $16,744. Thus, Ms. Adde's fee request would need to be reduced by another $3,349.

As far as work performed to prepare and file Ms. Adde's fee petition, none of that work could be considered to be in furtherance of her post allowance claim, so no further adjustment based on the correct rate for Mr. Oswald and Mr. Woodfield is needed. Ms. Adde's fee request, after adjustments are made to reflect a reasonable hourly rate for attorney services spent on her post allowance claim, would be reduced by a total amount of $5,487 ($2,138 plus $3,349). The court now turns to the degree of success obtained.

---

[23]/ The court only counted charges that were at the $420/hour rate. If Mr. Woodfield or Mr. Oswald charged Ms. Adde a lower rate, for example, for alternative dispute resolution, these lower rates did not appear to the court to be unreasonable.

###### 6.      Reduction Due to Limited Success

Plaintiff's fee request is for $148,867.  In light of the limited success achieved by Ms. Adde, the adjustment discussed in *Hensley* must be made.  As a threshold matter, the net loss for Ms. Adde and the entry of judgment in the government's favor does not mean that a one hundred percent reduction of Ms. Adde's attorney fees request is in order.  *See Precision Pine & Timber, Inc.*, 83 Fed. Cl. 544, 555 (2008) (reducing fees requested by a plaintiff by forty-two percent, not one hundred percent, where the plaintiff had successfully litigated some issues that reduced the judgment in favor of the government's counterclaim).  Although an attorney fees award may sometime be zero if only nominal success is obtained, *see Farrar*, 506 U.S. at 115, Ms. Adde achieved more than nominal success in this suit, as discussed *supra*.

One important consideration is the fact that the attorney fees request here is highly disproportionate to Ms. Adde's success on her post allowance claim.  The Federal Circuit has reversed a large fee award where the plaintiff achieved very limited success.  *Hubbard*, 480 F.3d at 1334.  Nonetheless, *Hubbard* rejected a strict mathematical reduction of the fee request in that case.  *Id.*

Although this court is tasked with making a rational reduction of attorney fee requests in cases where the plaintiff has achieved limited success, simple mathematical formulas are not adequate.  The comparison of the number of pages in a brief that address different claims, or of the number of successful counts to the total number of counts in a complaint, or of the amount of a judgment to the damages amount originally requested all have their limitations as techniques.  *See, e.g.*, *Hubbard*, 480 F.3d at 1333-34 (rejecting the government's suggestion that the plaintiff was due only 0.06 percent of the fees requested, because the plaintiff had obtained only 0.06 percent of his requested damages); *Cmty. Heating & Plumbing Co.v. Garrett*, 2 F.3d 1143, 1146 (Fed. Cir. 1993) (rejecting "the ratio of successful claims to total claims" apportionment method); *Naekel v. Dep't of Transp.*, 884 F.2d 1378, 1379 (Fed. Cir. 1989) (rejecting the apportionment of attorney fees based on the number of pages of discussion devoted to different claims in briefs).  The court must attempt a more nuanced assessment of the attorney charges related to unsuccessful claims, for which no award of attorney fees is appropriate.  *Hensley*, 461 U.S. at 435 (foreclosing the award of fees for work spent on distinct, unsuccessful claims).

Here, the court would base its methodology on a comparison of the evolving focus of plaintiff's attorneys on the post allowance issue. For about one year, sixty percent of the attorneys' work was focused on the post allowance claim. For almost thirty-three months, approximately forty percent of the work on this case was focused on plaintiff's post allowance claim. Although the amounts billed varied from month to month, the court saw no pronounced variations in the pace of billing. Based on its review of plaintiff's billing records, the court estimates that approximately forty-five percent of the attorney (and support staff) work on this case was devoted to the post allowance claim.[24]

### 7.    Award of Reasonable Fees and Costs, if an Award Were Warranted in the Interest of Justice

Plaintiff's fee request, for $148,867, adjusted for limited success because only forty-five percent of the work devoted to this case was related to her success on a portion of her post allowance claim, would result in an initial figure of $66,990. That amount would be further reduced to reflect a reasonable hourly rate for the work performed by Mr. Oswald and Mr. Woodfield on Ms. Adde's post allowance claim. That reduction would be in the amount of $5,487. If an award were in the interest of justice, Ms. Adde would receive $61,503 in attorney fees. As discussed *supra*, her award of expenses inherent in the work of her attorneys would be $393.81. If the court had found an award of attorney fees and costs to be in the interest of justice in this matter, Ms. Adde would have received an award of $61,896.81.

### CONCLUSION

The court finds that plaintiff's petition for an award of attorney fees and costs, founded on the Back Pay Act, must be denied in its entirety. The court also finds that the taxable costs presented in plaintiff's Bill of Costs are not available

---

[24]/ If the court were to compare the judgment on plaintiff's post allowance claim ($33,736.60) to the damages she initially requested in her suit ($70,000 listed on the cover sheet of her complaint), Ms. Adde had a forty-eight percent success rate. If the court were to consider the ratio of successful claims to total claims in the complaint, Ms. Adde won approximately eighty percent of her post allowance claim (Count I) and lost the entirety of her cost of living adjustment claim (Count II), producing a ratio of success of approximately forty percent.

under the Back Pay Act, and the court declines to award plaintiff costs under any other authority.  This case is now closed.

Accordingly, it is hereby **ORDERED** that

(1)     Plaintiff's Bill of Costs, filed February 4, 2011, is rejected as inappropriate in these circumstances and is **DISALLOWED** in its entirety;

(2)     Plaintiff's Petition for Award of Attorneys' Fees [and Costs], filed February 7, 2011, is **DENIED** in its entirety; and

(3)     No costs.

/s/ Lynn J. Bush
LYNN J. BUSH
Judge

25